CRISTINA LYNN RUTH, Plaintiff v. VAUGHN ALAN RUTH, Defendant

No. COA02-1129

(Filed 20 May 2003)

## 1. Contempt— civil—compliance by hearing

There was no authority for a district court to adjudge plaintiff in willful civil contempt or to commit her to the custody of the sheriff, even for a suspended sentence, where plaintiff did not initially return her children to her ex-husband after a scheduled visit but did return them by the time of the contempt hearing. A district court does not have the authority to impose civil contempt after an individual has complied with a court order.

## 2. Contempt— hearing—lost wages and attorney fees

The district court both erred and did not err in a contempt hearing arising from a visitation dispute by ordering plaintiff to pay defendant's lost wages and attorney's fees. Defendant's counsel conceded in oral argument that there was no legal basis upon which plaintiff could be required to compensate defendant for lost wages, and the award for defendant's West Virginia attorney fees was vacated because the matter before the court in the

show-cause hearing did not implicate Chapter 50A, through which the UCCJEA was adopted. However, plaintiff conceded that defendant was entitled to recover attorney fees incurred in filing the motion to show cause and in the related hearings in this state.

Appeal by plaintiff from order entered 29 April 2002 by Judge Charles E. Brown in Rowan County District Court. Heard in the Court of Appeals 16 April 2003.

*Horack, Talley, Pharr & Lowndes, P.A., by Thomas R. Cannon and Kary C. Watson, for plaintiff-appellant.*

*Robert L. Inge for defendant-appellee.*

MARTIN, Judge.

Plaintiff and defendant were married in 1992; two daughters were born of the marriage. Plaintiff and defendant separated and were subsequently divorced. By orders entered in the Rowan County District Court on 21 January 1997 and 2 June 1998, plaintiff was awarded custody of the two children and defendant was granted visitation. In March 2001, defendant moved for modification of the custody order. By order dated 13 July 2001 and amended order dated 24 July 2001, the district court awarded custody to defendant, effective 27 June 2001, and granted specified visitation to plaintiff. Plaintiff's appeal from the amended order modifying custody is currently pending before another panel of this Court.

In accordance with the visitation provisions of the amended custody order, plaintiff picked up the children for her scheduled visitation on 26 December 2001 and took them to her home in West Virginia. The following day she took the children to the West Virginia Department of Health and Human Services. After a lengthy interview of the children, the intake worker indicated a suspicion of abuse by defendant and instructed plaintiff to petition for an emergency protective order. Upon plaintiff's petition, a West Virginia magistrate entered a protective order granting temporary custody of the children to plaintiff, and she did not return the children to defendant on 3 January 2002 as scheduled.

On 10 January 2002, upon motion of defendant, the Rowan County District Court entered an order requiring plaintiff to appear on 16 January 2002 and show cause why she should not be adjudged

in contempt for her failure to abide by the terms of the July 2001 custody order. Pursuant to communication between the Rowan County District Court and the Wood County West Virginia Family Court concerning jurisdiction of the matter under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), the West Virginia court entered an order on 14 January 2002 terminating the emergency protective order and directing plaintiff to appear with the children in district court in Rowan County on 16 January.

Plaintiff complied with the orders and appeared with the children before the district court in Rowan County on 16 January. The children were returned to defendant at that time; at plaintiff's request the contempt hearing was continued to 28 March so that plaintiff's attorney could prepare.

At the conclusion of the 28 March hearing, the district court entered an order in which it found facts, concluded that plaintiff "is in willful contempt of this court and it's [sic] orders" and "has the means and ability to purge herself of contempt[,]" and adjudged her to be in civil contempt. The court ordered plaintiff committed to the sheriff's custody "until such time as she purges herself of contempt," but suspended the commitment "on the condition [she] purge herself of contempt by paying the sum of $2,637.00 into the Defendant's attorney's trust account . . . within sixty days . . . ." According to the findings of fact, this sum was composed of $252 in lost wages for defendant, $960 in fees for defendant's West Virginia attorney, and $1,425 in fees for defendant's North Carolina attorney. Plaintiff has appealed the order finding her in civil contempt.

---

**[1]** Plaintiff argues the district court erred by holding her in civil contempt after she had purged herself of contempt by complying with the amended custody order on 16 January 2002 and returning the children to defendant. According to G.S. § 5A-21:

(a) Failure to comply with an order of a court is a continuing civil contempt as long as:

(1) The order remains in force;

(2) The purpose of the order may still be served by compliance with the order;

(2a) The noncompliance by the person to whom the order is directed is willful; and

(3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.

(b) A person who is found in civil contempt may be imprisoned as long as the civil contempt continues, . . . .

N.C. Gen. Stat. § 5A-21(a), (b) (2003). Generally, an appeal of an underlying order stays any contempt proceedings to enforce that order until the validity of the order is determined on appeal. N.C. Gen. Stat. § 1-294 (2003); *Quick v. Quick*, 305 N.C. 446, 290 S.E.2d 653 (1982). However, G.S. § 50-13.3(a) authorizes the district court to enforce a custody order "by proceedings for civil contempt during the pendency of the appeal [of that order]." N.C. Gen. Stat. § 50-13.3(a) (2003). In contrast to criminal contempt which "is administered as punishment for acts already committed that have impeded the administration of justice, . . . [c]ivil contempt, . . ., is employed to coerce disobedient defendants into complying with orders of court." *Brower v. Brower*, 70 N.C. App. 131, 133, 318 S.E.2d 542, 544 (1984). Thus, a district court:

does not have the authority to impose civil contempt after an individual has complied with a court order, even if the compliance occurs after the party is served with a motion to show cause why he should not be held in contempt of court.

*Reynolds v. Reynolds*, 147 N.C. App. 566, 573, 557 S.E.2d 126, 131 (2001) (citing *Hudson v. Hudson*, 31 N.C. App. 547, 551, 230 S.E.2d 188, 190 (1976)), *reversed on other grounds*, 356 N.C. 287, 569 S.E.2d 645 (2002).

In the present case, the district court found, based on the testimony of both parties, that "[p]laintiff returned the children to the Defendant on January 16, 2002." Therefore, its conclusion that she "is in willful contempt" is not supported by the findings or evidence. *See Walleshauser v. Walleshauser*, 100 N.C. App. 594, 397 S.E.2d 371 (1990) (in reviewing contempt proceedings, appellate court constrained to determining whether there is competent evidence to support findings of fact and findings support conclusions of law). Moreover, because there was no longer any purpose to be served by holding plaintiff in civil contempt, the conclusion was improper as a matter of law. *Reynolds, supra*. The district court was without authority to adjudge plaintiff "to be in willful civil contempt" or to commit her to the custody of the sheriff, even for a suspended sentence, and those portions of the order must be vacated. Because we

vacate the judgment of contempt, we need not address plaintiff's alternative argument that the evidence did not support the district court's finding that her non-compliance with the custody order was willful.

[2] Plaintiff also argues the trial court erred in ordering her to pay defendant's lost wages and attorney's fees. At oral argument, defendant's counsel conceded there is no legal basis upon which the plaintiff could be required, in the contempt proceeding, to compensate him for his lost wages. *See Atassi v. Atassi*, 122 N.C. App. 356, 470 S.E.2d 59 (1996) (compensatory damages inappropriate in contempt proceeding). Therefore, the order requiring plaintiff to pay defendant $252 for his lost wages is vacated.

In addition, plaintiff appears to have conceded, both in her brief and at oral argument, that defendant is entitled to recover his attorney's fees incurred in filing the motion to show cause and in the hearings related thereto.

> As a general rule, attorney's fees in a civil contempt action are not available unless the moving party prevails. Nonetheless, in the limited situation where contempt fails because the alleged contemnor complies with the previous orders after the motion to show cause is issued and prior to the contempt hearing, an award of attorney's fees is proper.

*Reynolds*, 147 N.C. App. at 575, 557 S.E.2d at 132. Therefore, that portion of the order requiring plaintiff to pay defendant's North Carolina attorney's fees in the amount of $1,425 is affirmed.

Still at issue, however, is the amount awarded defendant for attorney's fees which he incurred in West Virginia, presumably in connection with the dissolution of the temporary protective order. Generally, a court may not award attorney's fees in the absence of statutory authorization. *In re King*, 281 N.C. 533, 189 S.E.2d 158 (1972). The proceedings in West Virginia were governed by the UCCJEA as codified in that state's statutory scheme. *See* W. Va. Code § 48-20-101 *et seq.* (2003). At least two provisions of the UCCJEA address the issue of attorney's fees. *See* W. Va. Code §§ 48-20-208, 48-20-312. North Carolina has also adopted the UCCJEA and codified the same provisions relating to attorney's fees. *See* N.C. Gen. Stat. § 50A-101 *et seq.* (2003). However, the matter before the district court in this State at the show cause hearing did not implicate Chapter 50A and its provisions may not be relied upon in this case to uphold the award of attor-

ney's fees incurred by defendant in West Virginia, as any such award was within the jurisdiction of the West Virginia court. Accordingly, we hold the district court erred in ordering plaintiff to pay defendant's West Virginia attorney's fees in the amount of $960 for the UCCJEA action in that state, and such portion of the order is vacated.

Affirmed in part; vacated in part.

Judges HUDSON and ELMORE concur.