*752 ELMORE, Judge, dissenting.
*765 I respectfully disagree with the majority's conclusion that the trial court found defendant in both civil and criminal contempt for "distinctly separate and discrete conduct." Defendant's same conduct-failing to return company property in willful violation of its orders-underlies both contempt adjudications, in direct violation of our general statutes. Accordingly, I respectfully dissent.
Because "[d]efendant alleges a violation of a statutory mandate, and '[a]lleged statutory errors are questions of law[,]' " State v. Reeves , 218 N.C.App. 570, 576, 721 S.E.2d 317, 322 (2012) (quoting State v. Mackey , 209 N.C.App. 116, 120, 708 S.E.2d 719, 721 (2011) ), we employ de novo review of defendant's challenge. Id.
Chapter 5A of our general statutes grants a court the power to punish a party for certain conduct by finding him or her in contempt of court, which comes in two forms: criminal contempt, governed by Article 1, see N.C. Gen. Stat. §§ 5A-11 to -17 (2105), and civil contempt, governed by Article 2, see N.C. Gen. Stat. §§ 5A-21 to -25 (2105). Under Article 1, N.C. Gen. Stat. § 5A-11(a)(1)-(10) enumerates conduct constituting criminal contempt, including "[w]illful disobedience of ... a court's ... order." Id. § 5A-11(a)(3). Under Article 2, N.C. Gen. Stat. § 5A-21(a) describes conduct constituting civil contempt and provides, in pertinent part:
(a) Failure to comply with an order of a court is a continuing civil contempt as long as:
(1) The order remains in force;
(2) The purpose of the order may still be served by compliance with the order;
(2a) The noncompliance by the person to whom the order is directed is willful; and
(3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.
*766 Generally, a trial court imposes criminal contempt to " 'punish[ ] for acts already committed that have impeded the administration of justice,' " and civil contempt " 'to coerce disobedient defendants into complying with orders of court.' " Ruth v. Ruth , 158 N.C.App. 123, 126, 579 S.E.2d 909, 912 (2003) (quoting Brower v. Brower , 70 N.C.App. 131, 133, 318 S.E.2d 542, 544 (1984) ). However, by statute, a court cannot punish a party twice by imposing both criminal and civil contempt for the same conduct. Compare N.C. Gen. Stat. § 5A-12(d) ("A person held in criminal contempt under this Article shall not, for the same conduct , be found in civil contempt under Article 2 of this Chapter, Civil Contempt." (emphasis added)), with N.C. Gen. Stat. § 5A-21(c) ("A person who is found in civil contempt under this Article shall not, for the same conduct , be found in criminal contempt under Article 1 of this Chapter." (emphasis added)). Yet the trial court here did just this when it found defendant in civil and criminal contempt based in large part upon the same conduct-his failing to return company property in willful violation of its TRO and preliminary injunction orders.
The relevant provisions of both orders are identical except for paragraph subheadings. The relevant paragraphs of the TRO provide:
h. Defendant shall ... take the following actions ... as stated below:
....
v. That all company-issued credit cards will be turned in and will not be used until and unless authorized by the Managers.
i. Defendant shall ... tak[e] the following actions within 24 hours of the entry of this order:
i. ... [R]eturn to Company Headquarters ... any and all [company] property, including ... the items listed below:
1. All office and other equipment purchased by or for the use of the Companies, including computers, tablets, phones, drones, audiovisual equipment, etc.;
2. All hardcopy and electronic Company files;
3. Keys and lock combinations to access Company property and equipment, including the Shelby Headend, Kings Mountain Headend, Simulsat, all *767 runs completed or in progress *753 (such as Ballantyne, Wake Forest, etc.), and other assets;
4. All Company vehicles along with keys or fobs;
5. All checkbooks, credit cards, and debit cards; and
6. All account, login and password access information.
....
iii. ... [H]ave all mail currently being delivered to [defendant's] residential address or UPS or USPS boxes now be delivered to Company Headquarters[.]
After the contempt proceeding, the trial court entered an order finding defendant in both civil and criminal contempt simultaneously for his willful noncompliance with its orders. In the criminal contempt section of its order, the trial court made the following findings regarding defendant's conduct:
a. Defendant failed to cause the Plaintiffs' mail to be delivered to Plaintiffs' headquarters ... as required by paragraph (i)(iii) of the TRO and [an identical paragraph] of the Preliminary Injunction;
b. Defendant failed to deliver ... equipment to Plaintiffs' headquarters ... including but not limited to at least two phone devices ... as required by paragraph (i)(i)(1) of the TRO and [an identical paragraph] of the Preliminary Injunction;
c. Defendant failed to provide all account, login and password access information ... as required by paragraph (i)(i)(6) of the TRO and [an identical paragraph] of the Preliminary Injunction; and,
d. Defendant failed to relinquish the Plaintiffs' credit card and debit cards as required by paragraphs (i)(i)(5) and (h)(v) of the TRO and [identical paragraphs] of the Preliminary Injunction.
(Emphasis added.) Based upon these findings, the trial court held defendant in criminal contempt for willful noncompliance with the TRO and preliminary injunction:
*768 At all times relevant to this proceeding Defendant had the ability to comply with these provisions of the TRO and Preliminary Injunction and has willfully failed to do so in criminal contempt of this Court as set forth in N.C.G.S. § 5A-11(a).
In the civil contempt section of its order, the trial court made the following findings regarding defendant's conduct:
a. Defendant's instruction to third parties to break Plaintiffs' fiber optic cables and re-splicing them upon renewal of a contract as illustrated in Plaintiffs' Exhibit 12;
b. Defendant's actions in establishing through the North Carolina Secretary of State an LLC known as RST Wireless without the Plaintiffs' knowledge and the engaging in both the purchase of equipment as well as exploration of utilizing Plaintiffs' existing networks in Wake Forest, North Carolina in order to provide wireless communication services; and,
c. Defendant's failure to return certain of Plaintiffs' equipment (as listed in Plaintiffs' Exhibit 12) as required by paragraphs (i)(i) of the TRO and (j)(i) of the Preliminary Injunction.
(Emphasis added.) Based upon these findings, the trial court held defendant in civil contempt for willful noncompliance with the TRO and preliminary injunction:
At all times relevant to this proceeding Defendant had the ability to comply with these provisions of the TRO and Preliminary Injunction and has willfully failed to do so in civil contempt of this Court as set forth in N.C.G.S. § 5A-21....
As shown, the trial court's order establishes that it found defendant in civil and criminal contempt for willful noncompliance with its orders based upon, in large part, defendant's same exact conduct-failing to return company property. Yet the trial court punished defendant twice by imposing both civil and criminal contempt sanctions. Although willful noncompliance with a court order may constitute either criminal contempt under section 5A-11(a)(3), or civil contempt under section 5A-21(a), a contemnor shall not be punished under both statutes based upon the same conduct. See N.C. Gen. Stat. §§ 5A-12(d), -21(c). Accordingly, I agree with defendant that, in violation of sections 5A-12(d)
*769 and 5A-21(c), the trial court improperly found him in both criminal and civil contempt, and I would vacate the entire order.
*754 The majority, however, relies on our decision in Adams Creek Associates v. Davis , 186 N.C.App. 512, 652 S.E.2d 677 (2007), to hold that the trial court here properly punished defendant twice by imposing both forms of contempt for "distinctly separate and discrete conduct." I disagree with the majority's expansive reading of our holding in Adams Creek Assocs. and its application of the reasoning in that case to support its holding in this case. The majority attaches significance to the fact in that case that the contempt orders were "based upon the defendants' trespass on the exact same piece of land," rather than the more relevant fact that the orders were based upon separate, contemptible acts.
In Adams Creek Assocs. , we affirmed a trial court's simultaneous civil and criminal contempt adjudications against two trespassers over the exact same piece of land only because the defendants committed independently contemptible acts: (1) willfully violating the court's orders by continuing to live and otherwise trespass on the property; and (2) displaying disparaging behavior during the contempt proceeding by testifying that they intended to continue trespassing regardless of court orders directing them otherwise. Adams Creek Assocs. , 186 N.C.App. at 527, 652 S.E.2d at 687. In that case, the defendants were "charged with contempt of court for their continued trespass on [particular] property following the entry of several court orders directing them not to trespass thereon," id. and, after the contempt proceeding, the trial court entered two orders finding them in both civil and criminal contempt. Id. at 520, 652 S.E.2d at 683.
On appeal, we rejected the defendants' argument that the trial court erred by finding them in civil and criminal contempt for the same behavior because, in fact, the sanctions were based upon separate, contemptible conduct. Id. at 526-27, 652 S.E.2d at 686-87. We observed that, during the contempt proceeding, the defendants testified they "had in fact been living on the subject property or otherwise trespassing on it" and "would not follow future court orders directing them to vacate the property." Id . at 527, 652 S.E.2d at 687. Thus, we explained, the "defendants were found in civil contempt for failing to comply with the court's [previous] order , and were found in criminal contempt for their testimony threatening to disobey future orders of the court." Id . (emphasis added). Because the defendants "were found in civil and criminal contempt on the basis of different acts," we rejected the defendant's argument and affirmed the trial court's contempt adjudications. Id.
*770 To be sure, although the Adams Creek Assocs. decision does not specify which criminal contempt ground enumerated in N.C. Gen. Stat. § 5A-11(a) applied to the defendants, we can glean insight from the Adams Creek Assocs. Court's discussion addressing the trial court's "misnomer" in finding the defendants in indirect, rather than direct, criminal contempt:
In the instant case, defendants testified in the trial court's presence, constituting direct criminal contempt. However, the trial court mistakenly held them in indirect criminal contempt:
The testimony of the Defendants stating that they are not going to obey the orders of the court is disrespectful and disparages the respect due to the court and its orders.
Id. at 528, 652 S.E.2d at 687 ; see also N.C. Gen. Stat. § 5A-11(a)(2) ("Willful behavior committed during the sitting of a court in its immediate view and presence and directly tending to impair the respect due its authority."). Based on this discussion, it is apparent that the defendants in Adams Creek Assocs. were being held in criminal contempt not for willful noncompliance with a court order, as here, but for their disparaging testimony. Thus, the contempt adjudications were based upon two independently contemptible acts.
Yet the majority relies on Adams Creek Assocs. to support its conclusion that defendant here was found in criminal and civil contempt for "distinctly separate and discrete conduct based on a partially overlapping nucleus of facts." In reaching this conclusion, the majority points out that "both the civil and criminal contempt orders were based upon the defendants' trespass on the exact same piece of land" and reasons that the defendants' conduct differed in that one *755 act was "the[ir] disobedience of a past ... order" and another act was "th[eir] intention to continue to disobey the court's orders." Thus, in applying Adams Creek Assocs. , the majority concludes:
Here, it is readily apparent that, in accord with Adams Creek Assocs. , the trial court found Defendant in civil contempt based on his continued conduct in violation of the TRO and preliminary injunction in attempting to frustrate RST's business interests while simultaneously attempting to further his own at RST's expense, and found him in criminal contempt based upon his past conduct, that is, his refusal to obey the trial court's TRO and *771 preliminary injunction in failing to adhere to their terms including the return of various company assets of RST.
(Emphasis added.) I disagree with this expansive reading of Adams Creek Assocs. Adams Creek Assocs. held that a contemnor simultaneously may be found in civil and criminal contempt at the same proceeding, provided he or she is punished for different conduct. In my view, the emphasis should not be that both orders were "based upon the defendants' trespass on the exact same piece of land," but that both orders were based upon independently contemptible conduct-willful disobedience with a court order and disparaging testimony threatening to disobey future court orders.
Here, unlike the defendants in Adams Creek Assocs. , defendant neither testified that he intended to retain plaintiffs' property nor that he would disobey future orders of the court. Unlike in Adams Creek Assocs. , the record here does not reveal two forms of contemptible conduct. Rather, the trial court's order indicates that it imposed both forms of contempt against defendant for willful noncompliance with its orders, basing its decision, in large part, upon defendant's failure to return company property, see N.C. Gen. Stat. § 5A-11(a)(3) ("Willful disobedience of, resistance to, or interference with a court's lawful process, order, directive, or instruction or its execution."), which I believe runs afoul of our general statutes.
Furthermore, the majority's holding effectively nullifies the statutory mandates that a party "shall not, for the same conduct" be punished for both civil and criminal contempt, see N.C. Gen. Stat. §§ 5A-12(d), -21(c), as every party charged with willful noncompliance of a court order whose only conduct was leaving uncorrected a single directive in that order would nonetheless be subject to both criminal and civil contempt, on the basis that past and continued violations of that order constitute separate, contemptible conduct.
Because the trial court here punished defendant twice by imposing both civil and criminal contempt sanctions against him based, in large part, upon the same exact conduct-violating its orders by failing to return company property-I believe the trial court violated the statutory mandates prohibiting it from finding a party in both forms of contempt for the same conduct. Therefore, I respectfully dissent.